[No. 2447]

## C. L. TOBIN, RESPONDENT, *v.* FRANK GARTIEZ, V. CUVIATA, AND T. ESAN, APPELLANTS.

[191 Pac. 1063]

1. JUSTICES OF THE PEACE—ACTION INVOLVING TITLE TO LAND PROPERLY CERTIFIED TO DISTRICT COURT, THOUGH PLEADINGS NOT VERIFIED.

In an action originally brought in the justice court for damages for grazing of sheep on plaintiff's land in violation of Rev. Laws, 2335, where action involved title to land, the court properly certified the cause to the district court, under section 5721, notwithstanding that the pleadings were not verified.

2. ESTATES—TERM "LEGAL TITLE" DEFINED.

The term "legal title" does not have a strict legal meaning, and in a broad sense signifies title in fee as well as any inferior estate that may be carved out of an estate in fee, including a leasehold estate, and any right of possession as distinguished from the mere actual occupation.

3. ANIMALS—LESSEE OF GRAZING LAND IS "OWNER" WITH "LEGAL TITLE" WITHIN STATUTE.

One who has leased land for grazing purposes is owner thereof, and has "legal title" thereto within Rev. Laws, 2335, making it unlawful to graze live stock on land of another without consent of "owner," provided person claiming to be owner has "legal title" thereto.

4. STATUTES—NONTECHNICAL TERM IN REMEDIAL STATUTE TO BE LIBERALLY CONSTRUED.

A term which is not technical in its meaning should, especially when used in a remedial statute, be liberally construed in favor of those entitled to its protection.

APPEAL from Sixth Judicial District Court, Humboldt County; *James A. Callahan,* Judge.

Action by C. L. Tobin against Frank Gartiez and others. From judgment for plaintiff, order denying motion for new trial and order denying motion to strike the cost bill, and order denying motion to strike item from cost bill, defendants appeal. **Affirmed.**

*Campbell, Robins & Salter,* for Appellants:

The district court was without jurisdiction, no verified answer raising a question of title to real estate having been filed with the justice of the peace. Rev. Laws, 5721; State v. Justice Court, 29 Nev. 191.

Plaintiff was not the owner of the lands; or, in the words of the statute, he had not the legal title nor even a less title thereto. He had simply a lease of the land, for the purpose of grazing only. The lower court assumed that the plaintiff was the owner of the land, and virtually that he was the owner as ownership is defined by the sheep-trespass act. Under the words "real estate," the law defines two kinds of property, namely, real property and chattel property. "An estate for years is regarded as a chattel." Blackstone; 10 R. C. L. 662. "A leasehold of a term is a chattel real and is personal." Potts v. Benedict, 104 Pac. 432. "The interest of a tenant in a term for years is deemed at common law personal property, as distinguished from real estate, however long its duration in years." 16 R. C. L. 536; Ann. Cas. 1921A, 619. The words "legal title" must be used in their ordinary sense. Wheeler v. Ballard, 137 Pac. 789, 791. "Usually 'legal title' means a full and absolute title." 8 Words & Phrases, 6980.

The word "owner" must be given a strict construction. "A number of authorities were cited showing the construction which has been placed upon the word 'owner,' both by the legislature and the courts. But the meaning of the word depends in a great measure upon the subject-matter to which it is applied." Schott v. Harvey, 51 Am. Rep. 201. "Had they not intended the act to be thus construed, they would have used the term 'owners in fee,' or some equivalent term." State v. Wheeler, 23 Nev. 144.

*Thomas A. Brandon,* for Respondent:

The trial court had jurisdiction. The facts of a case determine the jurisdiction. The pleadings in the instant case show that title is an issue; the evidence and the record on appeal show it. In Re Dixon, 40 Nev. 228; King v. Kutner-Goldstein Co., 67 Pac. 10.

The law gives a right of recovery for trespass to the holder of the legal title. Rev. Laws, 2335-2337. Title is the means by which the owner of the lands has the

just possession of his property. 2 Blackstone, 195. A lessee for years has the title to the leased lands during the term. Campfield v. Johnson, 21 N. J. Law, 83. Plaintiff unquestionably had just possession of the lands. A lessee is an "owner." State v. Wheeler, 23 Nev. 143; Price v. Ward, 25 Nev. 203. The owner of a lease estate rather than the entire fee has a title to the extent of his ownership or interest. Binhoff v. State, 90 Pac. 586; Grosso v. City of Lead, 9 S. D. 165; Roberts v. Wentworth, 59 Mass. 192; Ehle v. Quackenbos, 6 Hill, 537; Guild v. Prentiss, 83 Vt. 212.

By the Court, Ducker, J.:

This action was originally brought in the justice court of Union township, county of Humboldt, State of Nevada, to recover $200 damages for grazing sheep upon the lands alleged to be owned by respondent. An attorney fee in the sum of $250 is demanded in the complaint. In regard to the ownership and possession of the lands, it is alleged in the complaint as follows:

"That during all the times hereinafter mentioned the said plaintiff was, and now is, the owner, and lawfully in the possession, of that certain tract of land situated in the county of Humboldt, State of Nevada."

Then follows a particular description of the land by legal subdivisions. The complaint is not verified, and the answer, which in the main consists of denials as to the ownership and possession of the lands, damage sustained, the right of respondent to recover an attorney fee, and the reasonableness thereof as alleged in the complaint, is also unverified. The justice of the peace, being of the opinion that under the state of the pleadings a question as to the title of real estate was involved, certified the case to the district court for trial. In the district court the trial before a jury resulted in a verdict for respondent in the sum of $200 damages, and the court thereafter, on motion, fixed respondent's attorney fee in the sum of $250, and entered judgment against appellants and in favor of respondent for said

amounts, together with costs of suit. A motion for a new trial was denied by the court.

This appeal is taken from the judgment and order denying appellants' motion for a new trial, from the order of the court denying their motion to strike the cost bill, and also from the order denying their motion to strike from said cost bill the item "attorney fees," fixed by the court at $250.

Appellants contend that the district court had no jurisdiction of the subject-matter of the action, for the reason that no verified answer had been filed with the justice of the peace. Section 5721 of the Revised Laws of Nevada, under which this claim of want of jurisdiction is made, reads:

"The parties to an action in a justice court cannot give evidence upon any question which involves the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine; nor can any issue presenting such question be tried by such court; and if it appear from the plaintiff's own showing on the trial, or from the answer of the defendant, verified by his oath, that the determination of the action will necessarily involve the question of title or possession to real property, or the legality of any tax, impost, assessment, toll, or municipal fine, the justice must suspend all further proceedings in the action and certify the pleadings, and if any of the proceedings are oral, a transcript of the same, from his docket to the clerk of the district court of the county; and from the time of filing such pleadings or transcript with the clerk, the district court shall have over the action the same jurisdiction as if it had been commenced therein.  *   *   * "

This statute received consideration in In Re Dixon, 40 Nev. 228, 161 Pac. 737, and the jurisdictional question involved here was in that case determined adversely to appellant's contention. It was there held, in effect, that in an action instituted in a justice court an unverified pleading of a defendant, raising an issue as to the legality of a tax and the constitutionality of the law

imposing the ·tax, was sufficient to confer jurisdiction on the district court and make it the duty of the justice to suspend all further proceedings and certify the pleading to the district court. This ruling appears to be sound, and we must therefore regard it as controlling.

As declared by the court in King v. Kutner-Goldstein Co., 135 Cal. 65, 67 Pac. 10, in regard to a statute identical in almost every respect to section 5721:

"It must be deemed an elementary principle that the facts, and not the verified answer, constitute the final test of jurisdiction upon any cause of action inaugurated in a justice court."

1. The complaint in this case was not verified, and the unverified answer therefore raised an issue as to the respondent's title to the land within the meaning of section 1 of "An act to prevent trespass upon real estate by live stock," etc., approved February 18, 1893 (Stats. 1893, c. 31), under the provisions of which this action is prosecuted. Clearly then, by the constitutional reservation of such questions for trial in the district court, and the provisions of said section 5721, the justice court was, by the pleadings, deprived of · jurisdiction in the premises; and its certification of the cause to the district court was, in our judgment, warranted by said section. That the verification of a written answer is not absolutely essential to the authority of the justice to certify the cause, when the fact that the title to real estate is involved appears by a proper issue made by the pleadings, is fairly deducible from the fact that the section provides for such a transfer in a proper case when the answer is oral. It follows from the views we have expressed that the district court had jurisdiction to try the cause.

Appellants insist that respondent's title to the lands involved is not sufficient in law to enable him to maintain this action. Section 1, defining the character of title contemplated by the act in question, provides as follows:

"It shall be unlawful for any person or persons to

herd or graze any live stock upon the lands of another without first having obtained the consent of the owner or owners of the land so to do; *provided,* that the person claiming to be the owner of said lands has the legal title thereto, or an application to purchase the same, with first payment made thereon." Rev. Laws, 2335.

The record discloses that on the trial of the case respondent proved that the Central Pacific Railway Company was, on the 18th day of October, 1918, the owner in fee simple of all the lands described in the complaint, and on that date, for a valuable consideration, entered into a lease with respondent, by virtue of which said lands were leased to him from the 1st day of October, 1918, to September 30, 1919, for grazing purposes only. This lease was in force and effect at the time of the trespass. Respondent asserted no title, possession, or right of possession to the lands except under said lease. The lower court in effect instructed the jury that the respondent was the owner of the lands described in the complaint and entitled to recover for any damages sustained. This instruction is as follows:

"You are instructed that the laws of the State of Nevada do not permit a person to herd or graze his sheep upon the land of another without his consent, nor permit his sheep to be so herded or grazed; and if you find from a preponderance of the evidence in this case that, at the time of the alleged trespass, the defendants, without the plaintiff's consent, did herd or graze their sheep, or permit them to be herded or grazed, upon the lands described in the complaint, such herding or grazing is not permitted by the laws of this state, and your verdict should be for the plaintiff in such sum, not exceeding $250, as you may find from a preponderance of the evidence he has been actually damaged by such herding or grazing, and in this connection you are instructed that a person may act by his employee or agent as well as in person."

2, 3. The instruction was objected to by appellants as erroneous, in that it assumes that the respondent,

as lessee of the lands, had the legal title thereto within the meaning of said section 1. The term "legal title" does not have a strict legal meaning. A party may have the legal title to property although he is not the absolute owner in fee. In a broad sense it signifies title in fee as well as any inferior estate that may be carved out of an estate in fee. Legal title in a general sense signifies the right of possession as distinguished from the *pedis possessio* or mere actual occupation. Carroll v. Rigney, 15 R. I. 81, 23 Atl. 46; Chapman v. Dougherty, 87 Mo. 617, 56 Am. Rep. 470. "As applied to real estate, title is generally defined to be the means whereby the owner of lands has the just possession of his property." 28 Am. & Eng. Ency. Law, 232. The foregoing definition is generally accepted as an accurate definition of the term in its unrestricted signification. In this sense it is broad enough to and does include a leasehold estate. Campfield v. Johnson, 21 N. J. Law, 83.

4. The question then is narrowed down to a determination of what the legislature meant by the use of the term "legal title"; that is, whether meant in the limited sense as the means whereby one holds real estate as an owner in fee, or in a broader sense as evidence also of the right to the possession and enjoyment of some lesser estate. The word "owner," employed in said section 1, does not necessarily mean owner in fee simple, and may be applied to any defined interest in real estate including a leasehold interest. 28 Am. & Eng. Ency. Law, 234, 235; State v. Wheeler, 23 Nev. 143, 44 Pac. 430. So, if the legislature intended to give the word "owner" a much stricter meaning than is generally accorded to it in law, it is unlikely that it would have resorted to a term also general in its signification.

On the other hand, having undertaken to define the word "owner," it seems reasonable to suppose that, if it was meant to be taken in the narrow sense of owner in fee, such term, or its equivalent, would have been employed in the definition. We are inclined to the belief that the proviso in section 1, defining the term "owner,"

was not intended to restrict the meaning of that term, but to enlarge it so as to include such person, or persons, as may have applied to the state for the purchase of lands and made first payment on the application. Strength is given to this conclusion when we consider the great amount of land throughout the state held in leasehold for grazing and agricultural purposes at the time the statute was enacted, and that it is difficult to assign a reason why the legislature should exclude such lessees from the extraordinary remedy afforded by the statute. In fact, none can be given, and if appellants' contention were allowed to prevail it would be conceded that the legislature, in selecting real estate held in fee or under state contracts for the purposes of the act, made a mere arbitrary classification, excluding from its purview great numbers of landholders in this state equally entitled to its benefits. And, so far as any subsequent legislation is concerned, they are still denied any such remedy. It may be granted that this is a matter exclusively within the province of the legislature; but, in the absence of clear expression to that effect, an intention to provide a remedy so inequitable as between landowners of this state ought not to be presumed. As the term "legal title" is not technical in its meaning, it should, especially when used in a remedial statute, be construed liberally in favor of the parties obviously entitled to its protection.

That respondent's interest in the land was by the terms of the lease limited to the extent of grazing it with live stock does not alter the legal status of the case. He was nevertheless entitled to the right of exclusive possession for such purposes, and was the only person capable of sustaining appreciable damage by the herding and grazing of appellant's live stock upon the land. We conclude that respondent, as the lessee of the Central Pacific Railway Company, had the legal right to the land described in the lease admitted in evidence, and that the instruction given by the court in this regard is correct. Consequently the court did not

err in refusing the instructions offered by appellants, stating, in substance, that there has been a failure of proof as to respondent's ownership of the legal title.

Appellants contend that, as respondent's title to the land is not sufficient in law to enable him to maintain an action under the particular act in question, the court was without authority to enter any judgment for counsel fees. Inasmuch as we hold the title sufficient, and as the act expressly provides that the live stock which is unlawfully herded or grazed upon the lands of another shall be liable for all damages done, together with costs of suit and reasonable counsel fees, there was no error in the action of the court in fixing respondent's counsel fees at the sum of $250. The reasonableness of the amount is not questioned.

The judgment is affirmed.